ELMER E. COLE *vs.* BORGHILD COLE *et al.*

JULY 11, 1941.

REARGUMENT DENIED OCTOBER 23, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This cause was begun by a bill in equity brought by a husband against his second wife, Borghild Cole, and Marion Jacobson, her minor daughter by a former husband. Savings accounts in certain banks being involved in the cause, these banks were made parties respondent in the bill. The cause is now before us on the appeal of Borghild Cole, individually and as guardian *ad litem* for Marion Jacobson,

from the final decree of the superior court, by which certain relief was granted against them and relief prayed for by Borghild Cole in the cross-bill annexed to her answer was denied and this cross-bill was dismissed. She will be hereinafter referred to simply as "the respondent".

After this decree was entered and the appeal therefrom was filed, but before the cause was certified to us upon the appeal, the complainant died and his death was suggested upon the record. The executor of his will was, by order of the superior court, substituted as the party complainant and has assumed and carried on the further prosecution of this cause.

In his amended bill of complaint the complainant alleged, in substance and effect, that at the time of his second marriage he was the owner of large sums of money; that on April 15, 1938 he had $12,086 or more on deposit with the respondent Peoples Savings Bank and $5000 or more on deposit with the respondent Providence Institution for Savings; and that on March 29, 1938, he had $2436.62 or more on deposit with the respondent Citizens Savings Bank and on April 12, 1938, had $10,000 or more on deposit with the respondent Industrial Trust Company, at its Warren branch, each of these four deposits being "in a supposedly joint account" in his name and that of the respondent and "payable to either or to the survivor."

He also alleged that after these dates the respondent took from his possession the bankbooks representing these deposits and had continued to withhold them from him, pretending that she was keeping them for him, and thus prevented him from withdrawing and using his own money to live on and to pay his debts, and was attempting to appropriate the money to her own use; and that of the money on deposit with the Peoples Savings Bank, as above stated, about $2000 was still on deposit there in his custody, either in the names of both of them and payable to either or to the survivor, or in her name alone; and that the major portion, about $10,000,

had been withdrawn from the custody of that bank and was in the possession of the respondent.

He further alleged that the above sum of money on deposit in the Providence Institution for Savings was still on deposit there, either in a "supposedly joint account" in both their names or in the name of the respondent only; that the above sum of money on deposit with the Citizens Savings Bank had been paid to the respondent alone and was on deposit either in her name only or in her name and that of her daughter Marion Jacobson; and that the above sum of money on deposit with the Industrial Trust Company, at its Warren branch, was still on deposit there, either in the form of a "supposedly joint account" in the names of himself and the respondent and payable to either or to the survivor, or in her name only.

He further alleged that at the time of the filing of his amended bill of complaint there was on deposit in the Peoples Savings Bank in the form of a "supposedly joint account" in the names of the respondent and her said daughter, payable to either or to the survivor, $2214.89 or over, practically all of which was money withdrawn by the respondent from one or both of the above-mentioned "supposedly joint accounts" on deposit in the Peoples Savings Bank and the Citizens Savings Bank and payable to him or the respondent or to the survivor of them.

Then followed the vital allegations to the effect that at all times, until he was prevented by the respondent from so doing, he maintained and exercised exclusive control over the accounts which he had opened in these four banks and had never at any time relinquished such control and never intended to give to the respondent a joint interest in them, but "was persuaded and induced" by her to add her name to the bankbooks, by false and fraudulent representations and professions by her, when he was old and was infirm in body and enfeebled in mind; and that her name was added to the bankbooks solely for the sake of convenience.

The substantial relief prayed for by him was that the respondent be ordered to make an accounting to him of all moneys withdrawn by her from any of the accounts in the four banks and that she be declared a trustee for him of all moneys so withdrawn by her and in her possession, in any form, and be ordered to turn them over to him; and that the respondent banks be declared trustees for him of any money from these accounts which may be in their possession.

In her answer the respondent admitted the allegations of the amended bill of complaint as to the amounts which were on deposit on the dates stated, in the named four banks respectively, in so-called "joint accounts" in the names of the complainant and herself and payable to either or the survivor of them. She denied the allegations of the amended bill as to her taking the bankbooks from him and continuing to withhold them and thus preventing him from withdrawing and using the money to live on and to pay his debts and for the carrying on of his business, and that she was attempting to appropriate the money to her own use.

In substance and effect, she alleged that on the contrary, she, with his consent, took the bankbooks and drew out the money which she drew from any of these accounts and used it for his benefit and other proper purposes. She denied his allegation that he was persuaded and induced by her to add her name to the bankbooks by false and fraudulent representations and professions by her and that her name was added for the sake of convenience.

On the contrary she alleged, in substance and effect, in the part of her answer that was in the nature of a cross-bill, that she married him in reliance upon an agreement between them, by which he agreed that, if she would marry him, he would establish a joint ownership or tenancy in all of his personal property, especially in the bank deposits then standing in his name in the four banks above named and in the Rhode Island Hospital Trust Company, and he would also execute deeds or other instruments necessary for the establishment of a joint tenancy of himself and her in all of

the real estate then owned by him and would execute a will in her favor of all his property; and that on September 4, 1935, he caused her name as it then was, "Borghild Jacobson", to be added to the account standing in his name in the Peoples Savings Bank and afterwards to be changed thereon to "Borghild Cole"; and that in reliance upon his agreement as aforesaid, she married him on September 12, 1935.

She also alleged, in substance and effect, that on January 2, 1936, he caused her name to be added to the account theretofore standing in his name alone in the Providence Institution for Savings; that on February 5, 1937, he caused to be deposited in the Citizens Savings Bank, in the names of himself and her, $5101.25; and that on October 1, 1935, he caused the title to a certain tract of land belonging to him to be placed in his and her names as joint tenants, by deeds recorded October 4, 1935. The truth of this last allegation was admitted by the complainant.

She similarly alleged that afterwards, without her knowledge or consent, these various bank accounts were placed by him from time to time in various names, including his own in most cases and sometimes hers, until, in the spring of 1938, he caused the accounts in the Peoples Savings Bank, the Providence Institution for Savings, the Citizens Savings Bank and the Industrial Trust Company, Warren branch, to stand as stated near the beginning of this opinion, each in the names of the complainant and her, payable to either of them or to the survivor, and of the amounts there stated. The other allegations of the answer need not be stated for the purposes of this opinion.

When the cause was heard on its merits in the superior court, it appeared that the complainant and the respondent were married on September 12, 1935, when he was sixty-nine years old and she was about thirty-nine. There was evidence for and against the respondent's allegations as to an agreement made by the complainant to do certain things in consideration of her marrying him. It appeared also that the accounts in the Peoples Savings Bank, the Providence Insti-

tution for Savings and the Citizens Savings Bank were put by him in the names of both of them, payable to either or the survivor, as stated in her answer; it being shown that the account in the Citizens Savings Bank, then standing at $5101.25, was first made by him thus payable on February 13, 1936, about five months after their marriage.

It appeared also that between the times when these three bank accounts were first placed in both their names and the dates in 1938 when the accounts in all four of the above-named banks were placed in both their names as above stated, he had, without her knowledge or consent, caused all these accounts to be placed in various names, as alleged in her answer, but had always kept control of the bankbooks.

It was also proved that after all the four bank accounts had been put in both their names in 1938, she had come into possession of some of the bankbooks representing them, the testimony being in conflict as to whether or not this was with his voluntary assent; and that she had drawn considerable sums from the account in the Peoples Savings Bank and had received the amount of the deposit in the Citizens Savings Bank, it being in dispute whether or not this was with his consent. Some of the money thus received by her was spent by her for various purposes and much of it was, at the time of the hearing of the cause in the superior court, in an account in the Peoples Savings Bank under her sole control and payable to her or her daughter, Marion Jacobson, or to the survivor of them.

It was further proved that the complainant, by six deeds executed September 27, and October 1, 1935, and recorded October 4, 1935, caused the title to three parcels of real estate that had belonged to him alone to be transferred, through a third person, into the names of himself and the respondent as joint tenants and retained title in himself alone to a number of other parcels of real estate.

At the conclusion of the hearing of this cause in the superior court on its merits, the justice before whom it was heard, hereinafter referred to as the trial justice, made a

decision, in which he found, with regard to the respondent's first contention, based on an alleged agreement in consideration of marriage, that the evidence showed that there was an agreement between the complainant and the respondent, prior to their marriage, for a property settlement; and that therein he "agreed to give her a joint interest in certain personal property and a joint interest in certain real estate as consideration for his marriage to her"; that he must carry out that agreement; and that the court "was going to hold him to it." With regard to her second contention, based on an alleged gift *inter vivos,* the trial justice also held, in effect, that when in 1938 the complainant had the accounts in the four banks made into "joint accounts", represented by bankbooks, he did so in order that, if she should survive him, she would have those accounts; and the trial justice added: "The burden is on her to prove to me by a fair preponderance of the evidence that there was a gift of those books. She has failed to do it."

Later he entered the decree now before us on her appeal. In this, two findings of facts were made. The first of these was that the complainant promised the respondent, in consideration of her marriage to him, "that he would establish certain bank accounts in the joint names of himself and the respondent, Borghild Cole, and that he would deed certain parcels of real estate to himself and to the respondent, Borghild Cole, as joint tenants, all of which the complainant did." The second finding was that he did not at any time make a gift to her, as her own absolute property, of the money on deposit, in his name and her name jointly, payable to either or the survivor, in the four banks, or of the books representing those deposits, "but on the contrary intended always to retain control and custody of said joint accounts and the books representing said accounts."

After considering the evidence in the cause, we are of the opinion that these findings of fact are substantially correct as we interpret them, being supported by the evidence; but

that in some important respects the body of the decree is inconsistent with these findings.

In the first paragraph of the body of the decree, following the findings of fact, it is stated that the respondent had failed to sustain the burden of proving the material allegations of her cross-bill by a fair preponderance of the evidence and the prayers therein are denied, and the cross-bill is dismissed. But the first finding of fact in the decree was not made in accordance with any allegation in the bill of complaint or in the answer properly so called. On the contrary it was based on allegations in the cross-bill, as to an antenuptial agreement between the complainant and the respondent, though it was not in accordance with all such allegations; and many of the material allegations of the cross-bill were clearly proved by the evidence.

We are also strongly inclined to the opinion that, in accordance with the first finding of fact, the respondent was entitled to certain relief against the complainant under her prayer for general relief, to prevent him from violating the antenuptial agreement between them, although not to any relief under any of her prayers for special relief. However, we see no reason, at this point, for specifying the form of such relief.

For these reasons we are of the opinion that the first paragraph of the body of the decree should be stricken out, or should be materially modified so as to be consistent with our interpretation of the decision of the trial justice. We are also of the opinion that the intention of the complainant to retain the custody and control of the so-called joint accounts and the books representing them, as set forth at the end of the second finding of fact in the decree, is only material as controverting the contention of the respondent that the complainant voluntarily let her have the custody and control of these books and authorized her to draw money from the accounts represented thereby.

It is evident from the body of the decree that the trial justice was of the opinion, and by clear inference found, that

under the antenuptial agreement between the complainant and the respondent the latter had no right to draw any money from these accounts without his consent and that he never gave such consent. We cannot say that this clearly implicit finding was not supported by the evidence.

But there was a second finding by him that is clearly implicit in the third and fourth paragraphs of the body of the decree. By the third paragraph the respondent was declared a trustee, for the benefit of the complainant, of all moneys which were withdrawn by her from June 9, 1938 to May 1, 1939 out of the "joint account" in the Peoples Savings Bank and which were in her hands, possession and control at the time of the entry of the decree.

By the fourth paragraph the respondent and her daughter Marion Jacobson were declared to be trustees for the complainant's benefit of any moneys, in excess of $2.64, in the possession of the mother and daughter, standing in their joint names and payable to either or to the survivor, on deposit with the Peoples Savings Bank, such moneys having been withdrawn by the respondent from the "joint accounts" in the names of the complainant and herself in that bank and the Citizens Savings Bank; and the mother and daughter were ordered to turn over such moneys to him forthwith.

This second implicit finding was that during his lifetime he was in absolute control of the four accounts and could draw out all the money in any or all of them and do as he pleased with the money so drawn out, thus having the power, without violating the antenuptial agreement, to prevent her from getting any of the money in any of these accounts, as the survivor of them, if she should be such survivor.

But we must consider whether this second implicit finding is consistent with such part of the first finding of fact in the decree as concerns bank accounts. This part, as interpreted in the light of the finding by the trial justice, in his decision, as to the antenuptial agreement between these parties, was that the complainant made a binding agreement with the respondent that, if she would marry him, he would establish

certain bank accounts in the joint names of himself and her. What bank accounts were covered by that part of the agreement is clearly indicated by the undisputed facts that, just before their marriage and soon after it, he put three of his savings accounts in both their names, payable to either or to the survivor; and that later, when the respondent discovered that he had afterwards changed these accounts so as to make them otherwise payable and had not made the account in the Industrial Trust Company, Warren branch, so payable, and she insisted on his making all of the four accounts payable in accordance with the antenuptial agreement, he did so; and allowed her to have all the bankbooks for these accounts, whether or not of his own accord.

We are of the opinion that the above-stated second implicit finding, as to the unfettered power of the complainant over the bank accounts, is clearly inconsistent with such part of the first finding of fact in the decree as concerns these bank accounts; and that it must be reversed.

We are of the opinion that, as properly interpreted, the antenuptial agreement, supported, as it was, by the valuable consideration of the respondent's marriage to the complainant, obligated him not only to make all these savings bank accounts payable to the survivor of them, but also to leave them so payable, and not to lessen the amounts so on deposit, except with the consent of the respondent or except so far as the money drawn out should be needed for family or business expenses or other reasonable expenses. It is our conclusion that any considerable withdrawals for any purposes not of this general character would be in violation of the clear intent and purpose of the antenuptial agreement, and would therefore constitute breaches of that agreement.

From the facts found by the trial justice and not clearly against the preponderance of the evidence, and from other facts proved by undisputed evidence, we draw the conclusion that the respondent had no right to withdraw any of the moneys which she did withdraw, during the period from June 9, 1938 to May 1, 1939, from the account standing in

the names of the complainant and herself in the Peoples Savings Bank; and that she was properly ordered, in the second paragraph of the body of the decree appealed from, to make a true and perfect account of all such moneys.

But we are of the opinion that the respondent should not have been declared a trustee, for the benefit of the complainant, of all such moneys so withdrawn by her and in her hands, possession and control, as provided in the third paragraph of that decree, but that she should have been ordered to restore all such money to the account in that bank standing in the names of the complainant and herself and payable to either or to the survivor of them.

We are also of the opinion that the respondent and her daughter Marion Jacobson should not have been declared to be trustees, for the benefit of the complainant of all moneys, in excess of $2.64, standing on deposit with the Peoples Savings Bank in the names of both the respondent and her daughter, and payable to either of them or to the survivor, and should not have been ordered to turn over such moneys to the complainant, as was done in the fourth paragraph of the decree appealed from. On the contrary, we are of the opinion that they should have been ordered to pay all of such moneys into the respective bank accounts, standing in the names of the complainant and respondent and payable to either of them or to the survivor, from which such moneys had been withdrawn by the respondent.

One reason of appeal stated by the respondent in her claim of appeal and relied upon before us is that the superior court "erred in its rulings admitting and excluding certain testimony", against objections by her. But we are of the opinion that these rulings were not such as to give any support to her appeal.

The complainant's counsel have contended, in their brief filed in this court and in their oral argument before us, that the respondent cannot enforce any agreement made by the complainant in consideration of her marrying him, because such agreement, if any was made, was not shown to be in

writing, and therefore is unenforceable under G. L. 1938, chap. 481, § 1, the statute of frauds, paragraph second. But no issue of the unenforceability of such agreement was raised by the complainant and brought before us upon an appeal taken by him. Therefore, we cannot properly pass upon it.

The appeal of the respondent Borghild Cole, individually and as guardian *ad litem* of Marion Jacobson, is sustained, and the decree appealed from is reversed in part.

On July 14, 1941 the parties may submit a form of decree, in accordance with this opinion, for entry in the superior court as of the date when the decree appealed from was entered.

PER CURIAM. After the filing of our opinion in this cause, the respondent Borghild Cole, hereinafter referred to as the respondent, filed by leave of this court a motion for a reargument.

We have carefully considered those points in that motion which are set forth by the respondent and numbered from 1 to 6 inclusive and we find that there is no merit in any of them and no sufficient reason for discussing any of them.

In the point numbered 7 the respondent "suggests" that "this court erred in finding in its opinion that, although the respondent should not have been declared a trustee for the benefit of the complainant of the monies referred to, she should have been ordered to repay all such monies into the respective bank accounts standing in the names of the complainant and the respondent and payable to either or the survivor, from which such monies had been withdrawn by the respondent . . . ."

But the reasons set forth by her in support of this suggestion show that her counsel have misunderstood the language of that paragraph of our opinion in which we held to be erroneous the first part of the third paragraph of the decree appealed from.

We believe that the meaning of that paragraph of our opinion is clear, when it is carefully read in connection with the third paragraph of that decree and in connection with an

earlier paragraph in our opinion in which the effect of the first part of that paragraph of the decree is stated. This meaning is that the respondent should not, as was done in that paragraph of the decree, have been *declared to be a trustee*, for the benefit of the complainant, of all moneys withdrawn by her from the joint account in their names in the Peoples Savings Bank from June 9, 1938 to May 1, 1939 and in her hands, possession and control at the date of that decree, but should have been *ordered to restore* to that account in that bank all the moneys so described in that paragraph of the decree.

So construed, that paragraph of our opinion is not subject to the first ground of objection by the respondent under her point 7 and we can see no force in her other ground thereunder. We therefore find no merit in this point 7.

In her point 8 she suggests "that the decision of the trial justice and the decree entered in the court below failed to take into account, as did this court, the testimony that withdrawals were made from certain of the bank accounts by both parties and by the respondent with the consent of the complainant." But we did not fail, nor do we find that the trial justice failed, to take into account such testimony. We see no merit in this point as a reason for granting the respondent's motion.

The respondent's point 9 is based on statements therein to the effect that under the language of a certain paragraph of our opinion "the complainant, himself, would have been the judge as to what were necessary, or reasonable, expenses" for payment of which he might have the right to withdraw money from any of the so-called joint bank accounts, without the consent of the respondent and without violating the antenuptial agreement between them; and that such language "would constitute the respective banks in which said accounts were deposited as arbiters charged with the duty of determining, under the opinion, whether amounts withdrawn were reasonable or not and whether such withdrawals constituted a breach of the ante nuptial agreement . . . ."

The powers and duties of the respondent banks are in no way involved in this cause or discussed or referred to in our opinion; and in that paragraph of our opinion to which this point 9 of the respondent's motion obviously refers there is no language which can reasonably be construed as supporting either of the above statements. We therefore find no merit in this point 9.

The respondent's point 10 is based on a statement that certain parts of our opinion which are quoted in that statement "contain erroneous conclusions, in that the respondent should not be ordered to do the impossible." This statement is evidently the result of the same misunderstanding of the language of our opinion as that which we pointed out above in discussing her point 7. We therefore find no merit in her point 10.

For the reasons above stated, the respondent's motion for a reargument is denied and dismissed.

On November 3, 1941 the parties may submit a form of decree in manner provided for in the opinion of this court rendered July 11, 1941.